## WILL OF HOYA.

### *December 15, 1920—January 11, 1921.*

*Executors: Purchases of real estate by executor: Void or voidable sales: Liability for profits: Legatee with notice of proceedings: Subsequent attack: Executor indebted to decedent at time of appointment: Obligations barred by the statute of limitations.*

1. Although sec. 3914, Stats. (providing that an executor shall not directly or indirectly purchase or be interested in the purchase of any part of real estate sold by him), declares sales made contrary to such provision shall be void, such sales are voidable only, and an action to set the same aside must be brought within the five-year period fixed by sec. 3918.
2. Where a residuary legatee, through his attorneys, had notice that the executor had purchased real estate of the estate, but acquiesced in the approval of the sale by the county court, he cannot, after final settlement, attack the purchase on appeal to the circuit court.
3. Where an executor purchased real property of the estate and made a profit, he may be compelled as trustee to account therefor.
4. One accepting such a trust as executor becomes thereby chargeable in some way with existing obligations which he owes to the estate he undertakes to administer.
5. The running of the statute of limitations absolutely extinguishes the cause of action, such statutes in this state not being treated as statutes of repose; hence one who becomes an executor of a decedent's estate does not thereby become chargeable with debts which he owed testatrix but which were barred by the statute.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Reversed.*

In 1896 one Ferdinand Hoya, Sr., of Milwaukee, died

testate, his wife, Agnes Hoya, being the sole beneficiary. Proceedings were started to probate his estate, but no final decree was entered therein, all parties concerned treating the real and personal property as belonging to the widow. October 31st of the same year the widow made her will appointing her two sons, *Ferdinand A. Hoya,* appellant here, and William C. Hoya, executors. She gave to each of the sons a specific legacy of $5,500 and provided that the residue should be divided equally between the two sons and a grandson, *Otto F. E. Hoya,* respondent here. The two sons received during the widowhood of the mother various and substantial sums of money from her.

In 1908 William C. Hoya, who before then had been engaged in several business enterprises, went through bankruptcy proceedings and made a composition with his creditors, the money to pay which was advanced by his mother.

January 27, 1912, Mrs. Agnes Hoya died and her will was admitted to probate on March 21st of the same year, after objections had been interposed to the appointment of *Ferdinand* as executor by the respondent and others. and a special administrator was appointed.

In July, 1913, an inventory and appraisal was filed with a verification by the said *Ferdinand A. Hoya* as surviving executor. It showed as real estate the premises which had been used and occupied by the deceased as a homestead and the value thereof was appraised at $6,150. Scheduled as personal property were the following items:

(1) Claim against the estate of William C. Hoya of four items of loans in 1908 aggregating $8,300 and with accrued interest of $1,641.77; (2) cash received from the special administrator of $507.53; (3) a mortgage by one Hintz with accrued interest of $684.94; (4) a note of one Stecker with accrued interest of $208.13; which several items were appraised at the stated amounts. .

· The following items, each of which was stated by the executor to be outlawed and each appraised as worthless by the appraisers: (a) A check of *Ferdinand A. Hoya;* Decem-

ber 12, 1898, payable to Agnes Hoya, executrix, $300;
(b) note of *Ferdinand A. Hoya,* May 4, 1900, for $767,
payable in one year, with interest at seven per cent., with
the indorsement thereon of interest paid to August 4, 1900;
(c) note of August 18, 1900, in the sum of $200, payable
in six months, seven per cent. interest; (d) note of same,
July 16, 1904, for $600, payable in three months, at seven
per cent. interest.

There are also scheduled an item for a gold watch and
chain of the value $100, household furniture and wearing
apparel $177, a $500 note which had long been outlawed
and the maker whereof had gone through voluntary assign-
ment, a deposit of $11.13 in the First National Bank, and in
the Germania Bank of $23.87; and cash on hand fifty cents.

On July 12, 1913, the executor filed an interlocutory ac-
count showing the receipt of $507.53 from the special ad-
ministrator and the payment of the principal of the Hintz
mortgage of $200 with interest, and the two bank deposits
and three other small items.

The disbursements included a number of items of alleged
payments to himself for repairs and improvements to the
homestead and for taxes on the same; the amount of the
disbursements aggregating at that time $491.64.

In April, 1914, *Ferdinand A. Hoya* filed a petition in the
county court stating in substance that the present estate is
insufficient to pay the legacies, debts, costs of administration,
and the inheritance taxes; setting forth the situation as to
the claim scheduled in the inventory as against the estate of
William C. Hoya and that it was being contested in the
estate of said deceased brother, and if collectible would have
to be offset against the legacy of $5,500 provided for in the
will of Agnes Hoya; that there were claims against the
estate of upwards of $2,000. It then described the real
estate in question and that the same had been appraised at
$6,150. The petition was silent as to the fact of these
premises having been described in the inventory as a home-
stead.

Upon such petition an order for a hearing was granted and requiring service of notice thereof on all the parties interested.

It appeared from a recital in the sheriff's certificate filed with his return as to the service of such notice that the respondent grandson, *Otto F. E. Hoya,* could not be found and was a resident of Berlin, Germany. Admission of service of a copy of such order, however, was made by attorneys representing *Otto F. E. Hoya.* The oath of such executor to make such sale and the usual form of bond in the sum of $7,500 were filed and approved.

July 8, 1914, an order for the sale was made reciting, among other things, that due notice had been given for the hearing of the petition and that appearance was made for the executor and on behalf of such petition and no one appeared to oppose, and thereupon the executor was licensed and authorized to sell such real estate in the usual manner and after an appraisal should be had thereon.

On October 5, 1914, an inventory on such sale was filed and the same premises were now appraised at $4,250 by the same appraisers who had fixed its value in the inventory of July, 1913, at $6,150.

October 7, 1914, the executor filed his report of sale reciting, among other things, that one George L. Henes had bid $4,000 and *Ferdinand A. Hoya* bid $4,250 for said property and it was then struck off and sold to *Ferdinand A. Hoya* as the highest and best bidder. Due service of the notice of sale was admitted in September, 1914, by the attorneys for respondent, *Otto F. E. Hoya.*

Notice was made and served on the same attorneys of the application of the executor for an order confirming the sale, and on November 27, 1914, an order was made confirming such sale, reciting that due notice had been given of such application to all persons interested and no person appeared to oppose confirmation, and that it appeared to the court that the said sale was legally made and fairly conducted and that the sum of $4,250 is not disproportionate of the value of

said real estate, and thereupon confirmed the same and directed the executor to execute and deliver a deed to the purchaser.

A claim was interposed by *Ferdinand A. Hoya* as surviving executor of his mother's estate against the estate of his brother, William C. Hoya, on account of the four several items aggregating $8,500, together with interest above mentioned. Objections were interposed to said claims by the administratrix of the estate of William C. Hoya, and upon a hearing had the county court decided on June 22, 1914, that of said claim $2,760 should be disallowed and $3,200, together with a contingent claim of $200 with interest, allowed, and judgment in accordance therewith was filed in the county court June 30, 1914.

December 4, 1914, *Ferdinand A. Hoya* filed his verified account and petition for the examination and allowance thereof and of the account theretofore filed by him and for the determination and adjudication of the inheritance tax. It showed in the items of receipts a charge against the executor for rent for the real estate at $20 per month, the amount of $4,250 realized on the sale, and an item of $3,400 as being due from the estate of William C. Hoya. Objections were interposed to this account so filed with reference to the charges on account of repairs to the homestead and the alleged rental thereof and on the ground that the executor had omitted to account for all the property belonging to the deceased. A hearing was had upon the objections, and the court found that the real estate constituted the homestead of the deceased; that the executor had converted to his own use the household furniture, wearing apparel, and gold watch and chain, and adjudged that the real estate was not subject to the payment of the claims filed in the estate; that the executor was not required to charge himself with rents collected from the homestead and not entitled to credit for any items of repairs, management, and up-keep of the same; disallowed certain items of the account as to the

payment of premiums on bonds and disallowed certain other items not material here, and then surcharged the executor's account and directed a payment to be made *pro rata* upon the claims filed. On December 3, 1917, an order was made directing the payment of a 26.4 per cent. dividend to the respective claimants. It appears that such payments were made.

May 27, 1918, a final order of the county court was made and entered determining in substance that the executor had fully administered the estate; that there remained in his hands the proceeds from the sale of the homestead, namely, $4,250, which amount is not subject to the claims of the creditors; that the creditors had been paid a final dividend; that William C. Hoya was indebted to the estate in the sum of $3,400; that the real estate had theretofore been sold by order of the court, and then, pursuant to the terms of the last will of said deceased, the court decreed distribution of the personal property, to *Ferdinand A. Hoya* $3,825, to the legal representatives of the estate of William C. Hoya $425, which amounts make up the proceeds of the sale of the homestead.

On the same day, it appearing that the executor had filed receipts for the payments so ordered, the decree was made absolute, the executor discharged and his bond canceled.

From such order the grandson and residuary legatee appealed to the circuit court. Upon hearing there had the circuit court made his findings of fact and conclusions of law.

In addition to many of the facts above recited, about which there was no dispute, he also found in substance as follows:

That *Ferdinand A. Hoya* has had continuous possession of the homestead from the time of the death of his mother, and the reasonable rental value is $50 per month, amounting to about $4,800; that *Ferdinand* as executor neglected to close the estate within a reasonable time, for which no reason is given, and that he continued to delay the final

settlement of the estate for his selfish and fraudulent pur-
poses and to the injury of others interested in said estate;
that the estate of which Agnes Hoya came into possession
upon the death of her husband amounted approximately
to $40,000.

That at the time of the death of William C. Hoya, co-
executor, he was indebted to the estate of his mother in the
sum of at least $15,000, no part of which has been paid.

That *Ferdinand A. Hoya* at the death of his mother was
indebted to her in the sum of at "least $13,000, which in-
cludes the principal and interest on amounts loaned and ad-
vanced as disclosed in the testimony and record herein,
including the rent of homestead, with which he should be
charged."

That by reason of his fraudulent conduct in the manage-
ment of the estate he is not entitled to any compensation.

That the relations existing between *Ferdinand A. Hoya*
and his mother, who was eighty-three years of age at her
death, were of a very confidential nature and permitted and
furnished to *Ferdinand A. Hoya* opportunity to accomplish
his unlawful purposes, and that the mother depended to a
large extent upon her son *Ferdinand* to carry on her ordi-
nary business transactions, and "the disposition of said
*Ferdinand A. Hoya* to accomplish his illicit purpose to the
injury of co-devisees and creditors is fully established."

That the executor showed a persistent disregard of the
rights of others interested in the estate in his management
thereof and also a purpose to convert it to his own use.

That he neglected to schedule in his inventory various
items of assets belonging to said estate until compelled to
do so by order of the county court.

That after the attempted purchase of the homestead the
said *Ferdinand A. Hoya* incumbered the property with a
mortgage of $6,000 to the Bohemian Building & Loan Asso-
ciation of the city of Milwaukee and subsequent thereto
transferred the property to his wife, who now holds the
legal title.

"That the only tangible assets left by the said Agnes
Hoya at her death was the said homestead as herein de-
scribed, and that the said homestead was of the reasonable
value of $7,000, and that it was a fraud upon the said estate
and upon the creditors of said estate by the executor to
attempt to dispose of said homestead, as was done by him
in this matter, for the sum of $4,250."

"That the action of the executor in causing an inventory to be filed showing the value of the said real estate to be $4,250, whereas in truth and in fact its value was equal to, if not in excess of, $7,000, was a fraud upon the estate and all parties interested therein, and was done by said executor for the sole purpose of accomplishing his fraudulent purpose of securing for himself, to the exclusion of all others interested, the balance of said estate."

As conclusions of law the court held as follows:

(1) The final decree of the county court is vacated.

(2) That the attempted sale of the homestead to himself was fraudulent and void under and by virtue of sec. 3914, Stats., and is vacated, "and the said homestead or the proceeds thereof are hereby adjudged and decreed to be and constitute assets of said estate not yet administered."

(3) "That the indebtedness of *Ferdinand A. Hoya* to the estate of Agnes Hoya, amounting to approximately $13,000, upon his acceptance of the trust as executor . . . became and was assets in his hands owned by said estate and for which, as such executor, he was liable to account.

(4) "That the indebtedness of the said William C. Hoya to the estate of Agnes Hoya, amounting to approximately $15,000, upon his acceptance of the trust as executor . . . became and was assets in his hands belonging to said estate for which he was liable to account.

(5) "That the settlement and allowance by the county court of the final decree . . . under date of May 27, 1918, was erroneous and void and the same is hereby vacated and set aside.

(6) "That the attempted sale of the real estate of the said Agnes Hoya, deceased, being void in law, the title thereto remained in said estate and constitutes assets thereof unadministered and subject to further administration proceedings."

(7) That the objections filed against the executor's final accounts, which objections were adopted by the appellant (*Otto F. E. Hoya*), are fully sustained and the executor's final accounts and the decree allowing the same are vacated and set aside and the said matter is hereby remanded to the county court for further proceedings according to law.

(8) "That no statutory bar of limitation of action or discharge in bankruptcy applies to indebtedness of an executor to his estate, and such indebtedness upon his appoint-

ment and qualification constitutes assets in his hands belonging to the estate and for which he must account.":

From the judgment entered in accordance therewith the executor, *Ferdinand A. Hoya,* has appealed to this court.

For the appellant there was a brief by *Schmitz, Wild & Gross* of Milwaukee, and oral argument by *Robert E. Wild* and *E. J. Gross.*

*Andrew Gilbertson* of Milwaukee, for the respondent.

ESCHWEILER, J.     Many of the details of appellant's administration of his mother's estate we have not deemed it necessary to set forth in the statement of facts. The whole record, however, showing the manner in which the appellant as executor conducted his trust, presents a very unpleasant picture and well deserved the condemnation which it repeatedly received in the county court as well as that expressed so vigorously in the findings of the circuit court.

Three separate questions are presented on this appeal: First, Can the respondent *Otto F. E. Hoya,* grandson and beneficiary of the deceased, be now permitted to attack and set aside the sale of the homestead by the executor to himself in October, 1914? Second, Were the obligations of *Ferdinand C. Hoya* arising from the loans to him by his mother, and against which the statute of limitations had run at the time of her death, chargeable against him as assets of the estate upon his assuming to act as executor? and thirdly, Should the amount of the indebtedness of the co-executor, William C. Hoya, to the estate of his mother be increased herein over the amount fixed by the same county court in the hearing upon the claim filed by the appellant here as executor of his mother's estate against the estate of said William C. Hoya?

The circuit court held that the sale of the homestead in October, 1914, the details of which are set forth in the statement of facts, was void under sec. 3914, Stats. This statute provides, in substance, that an executor shall not

directly or indirectly purchase or be interested in the purchase of any part of the real estate sold by him, and "all sales made contrary to the provisions of this section shall be **void**."

The literal language of this last quoted clause of sec. 3914, Stats., has, however, been restricted in that the word "void" as it there appears must be construed to mean voidable; and that an executor so purchasing may nevertheless have and convey good title to third persons unless and except such sale be set aside either by proper objections to the confirmation thereof or by a direct action. The latter, as is provided in sec. 3918, Stats., must be brought within five years from the sale. That this meaning and effect must be given to said sec. 3914 has been repeatedly held. *Melms v. Pabst B. Co.* 93 Wis. 153 (66 N. W. 518) at p. 164; *Gibson v. Gibson,* 102 Wis. 501, 506, 78 N. W. 917; *Keilly v. Severson,* 149 Wis. 251, 255, 135 N. W. 875. See, also, notes in L. R. A. 1918B, 15, 29, 41.

At the time of the decree in the circuit court more than five years had elapsed since the making of the sale. In August, 1917, the executor had sold the property to one Gottschalk and he in turn to Mrs. Hoya, wife of the executor. In the following month she mortgaged the property to a building and loan association. Neither she nor the mortgagee was a party to this proceeding, and no action, up to the time of the entry of the decree herein, had been brought against them. The title, therefore, to this real estate had by the lapse of time vested in the purchaser. Sec. 3918, Stats.; *Turner v. Scheiber,* 89 Wis. 1, 6, 61 N. W. 280; *Keilly v. Severson,* 149 Wis. 251, 255, 135 N. W. 875.

There is a further reason why the respondent here, *Otto F. E. Hoya,* cannot be permitted to now attack the sale of the homestead. He, through his attorneys, received notice of all the proceedings with relation to said sale. The report of the sale showed that the property had been purchased by

the executor himself. Upon the hearing of the executor's petition to confirm such sale, the respondent, having had due notice thereof, made no opposition to the same and took no further steps whatsoever with reference thereto or the confirmation thereof until he attempted by his appeal from the final decree of the county court of May, 1918, to raise the same questions thus passed over. He had his day in court upon such sale when the sale proceedings were before the court and is bound thereby.

Though the title be confirmed, as we have seen it must be under the sale, the executor may nevertheless be held accountable for any profits that he may have made out of the transaction, on the ground that when a trustee deals with trust property to his own advantage any profit accruing therefrom may be held to be for the benefit of the *cestui que trust*. *McClear v. Root*, 147 Wis. 60, 64, 132 N. W. 539. There is no finding here, however, of any profits out of the transaction, nor evidence that would support such a finding if made. The difference between the appraisal valuation in the inventory of July, 1913, and that made for the purpose of the sale in October, 1914, is explained by the testimony of the appraisers making the two appraisals, and there is nothing in the record that impeaches that testimony.

It follows, therefore, that so far as the disposition of the homestead is concerned the decree of the circuit court must be reversed and that of the county court affirmed.

The indebtedness of *Ferdinand A. Hoya* to his mother as scheduled in the inventory filed by him was made up of several items, each of which was marked "outlawed" by him and appraised as worthless by the appraisers, and were obligations upon which the statute of limitations had run at the time of his mother's death.

There is no question raised here as to the general rule that a person accepting such a trust as executor becomes thereby chargeable in some way with existing obligations of

his to the estate he undertakes to administer. *Wis. Trust Co. v. Cousins,* 172 Wis. 486, 179 N. W. 801, 808.

There is a conflict of authorities as to whether or not the same rule applies as to obligations against which a statute of limitations had run during the lifetime of the testator. The line of authorities holding that the statute of limitations does not bar the application of such general rule is in those jurisdictions wherein the statute of limitations is considered merely a statute of repose, applying to the remedy only, while the contrary view is maintained where it is considered that the statute of limitations destroys the right of action itself and gives rise to a new property right in the debtor. This latter view as to the statute of limitations has been repeatedly asserted by this court although such view is deemed to be contrary to that of many of the sister states and of the United States supreme court. *Hite v. Keene,* 149 Wis. 207, 213, 134 N. W. 383, 135 N. W. 354; *Laffitte v. Superior,* 142 Wis. 73, 84, 125 N. W. 105; *Eingartner v. Ill. S. Co.* 103 Wis. 373, 378, 79 N. W. 433. Many of the authorities on this question are found in L. R. A. 1918B, 619, and 1 A. L. R. 987.

Being committed, therefore, to the doctrine that upon the running of the statute the cause of action is extinguished and a new right comes into existence in favor of the debtor, of equal value in the eye of the law as was the former right to the cause of action, we feel compelled to now hold that an obligation barred by the statute of limitations at the death of the testator is not to be charged as against the debtor upon his assuming the duty of executor of the estate of such testator.

We can see no ground upon which it can be held that when the county court, in the matter of the estate of William C. Hoya, passed upon the indebtedness of William C. Hoya to his mother's estate as presented upon the issue made by the filing of the claim by the appellant here as

executor and the objections thereto by the administratrix of William's estate, and fixed the amount at $3,400, it can, by these proceedings in the mother's estate, wherein the administratrix of the estate of William is in no manner a party, be determined to be $15,000. As between the estate of Agnes Hoya and the estate of William C. Hoya, the place to determine the liability of William was in the administration of his estate. The determination there stands unimpeached in this record and is binding and conclusive.

It follows therefrom that the judgment of the circuit court setting aside the decree of the county court must be reversed and that of the county court affirmed.

*By the Court.*—Judgment reversed, and cause remanded with directions to affirm the judgment of the county court.